IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES CATON and
BARBARA CATON,

        Plaintiffs,

v.                                                                           Civil Action: 3:06-cv-75

GREEN TREE SERVICES, L.L.C.,

        Defendant.

**MEMORANDUM, OPINION, AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

On July 6, 2007, came the above named Plaintiffs, by Andrew C. Skinner, by telephone, and Defendant, by Nicholas P. Mooney, II, by telephone, for Plaintiffs' motion to compel discovery. Plaintiffs and Defendant again appeared by the same counsel by telephone on July 24, 2007, for Defendant's motion for protective order. Testimony was not taken and evidence was not introduced at either hearing.

## I. Introduction

A.     Procedural Background

The parties engaged in a discovery and a dispute arose. Plaintiffs filed the motion to compel at issue here on June 1, 2007. Defendant filed a response on June 15, 2007. Plaintiffs filed a reply on July 5. This Court held an evidentiary hearing and argument regarding the motion on July 6, 2007. That same day, Defendant filed its motion for protective order. Plaintiffs filed a response on July 20, 2007. This Court held a hearing regarding the motion on July 24, 2007.

B.   The Motions

   Plaintiffs' motion to compel discovery (docket 36)

   Defendant's motion for protective order (docket 58)

C.   Decision

   Plaintiffs' motion to compel discovery and Defendant's motion for protective order are both granted in part and denied in part, as stated in this opinion.

## II. Facts

Anthony Caton, the son of Plaintiffs, obtained a loan to purchase a home. Although Anthony owned the home, his parents made payments on the mortgage. At some point, Anthony's account became delinquent. He was contacted by Defendant regarding this. Anthony referred Defendant to his parents. Defendant contacted Plaintiffs regarding the loan, which eventually led Plaintiffs to bring this action. The case was originally filed in the Circuit Court of Berkeley County, West Virginia, and was removed to this Court on the basis of diversity jurisdiction on July 19, 2006. Plaintiffs allege Defendant violated the West Virginia Consumer Credit and Protection Act and committed the tort of outrage.

Plaintiffs served their first set of discovery requests when they filed the complaint. The time Defendant had to respond to the discovery was extended several times. Defendant served responses on February 14, 2007. On March 2, 2007, counsel for Plaintiffs wrote to counsel for Defendant, stating the responses were insufficient. Plaintiffs limited their discovery responses based on some objections, but also detailed how they disagreed with some objections. Counsel for both sides discussed the requests by telephone several times and reached an understanding. However, Defendant failed to supplement its responses. Plaintiffs' counsel attempted to contact

Defendant's counsel on May 24, 2007, but was unable to make contact. Plaintiffs then filed this motion to compel on June 1, 2007, which proceeded as set forth above.

On June 14, 2007, Plaintiffs served a deposition notice on Defendant. The notice asked for testimony concerning areas Defendant believed were involved the motion to compel. Defendant moved for a protective order, as stated above. On July 20, 2007, Plaintiffs filed a response whereby they agreed to withdraw some areas of the deposition notice. Plaintiffs stated this came after consultation with Defendant. This motion is now before the Court on the remaining issues.

### III. The Motions

A.  <u>Contentions of the Parties</u>

The parties disagree over a number of discovery requests. The Court believes it will be more efficient to discuss the arguments regarding each discovery request in the course of the opinion.

B.  <u>The Standards</u>

1.  <u>Discovery - Scope</u>. The Federal Rules provide that "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1). The Rules further give courts the authority to "order discovery of any matter relevant to the subject matter involved . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed

by Rule 26(b)(2)(i), (ii), and (iii)." Id.

2. <u>Discovery - Scope</u>. It has been repeatedly held that the "discovery rules are to be accorded a broad and liberal treatment." <u>Hickman v. Taylor</u>, 329 U.S. 495, 507, 67 S. Ct. 385, 392, 91 L. Ed. 451, 460 (1947). However, the discovery sought must be relevant. Fed. R. Civ. P. 26(b)(1); <u>see also</u> <u>Herbert v. Lando</u>, 441 U.S. 153, 177, 99 S. Ct. 1635, 1649, 60 L. Ed. 2d 115, 134 (1979) (stating that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied").

3. <u>Discovery - Relevancy</u>. A court must strike a balance between the broad scope of the rules of discovery and the discovery of relevant evidence that is ultimately deemed admissible or inadmissible at trial. The test for relevancy under the discovery rules is necessarily broader than the test for relevancy under Rule 402 of the Federal Rules of Evidence. Fed. R. Civ. P. 26(b)(1) ("relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). In striking the appropriate balance between these two tensions, "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." <u>Hinkle v. City of Clarksburg,</u> 81 F.3d 416, 426 (4th Cir. 1996) (citations omitted).

4. <u>Discovery - Duty to Supplement</u>. Once the discovery process has commenced, a party has "a duty seasonably to amend a prior response . . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(2).

5. <u>Discovery - Duty to Respond Fully and Completely - No Gamesmanship</u>. Parties must respond truthfully, fully and completely to discovery or explain truthfully, fully and completely why they cannot respond. <u>Hansel v. Shell Oil Corporation</u>, 169 F.R.D. 303 (E.D. Pa. 1996). Gamesmanship to evade answering as required is not allowed. <u>United States v. Marshall</u>, 132 F.3d 63, 69 (D.C. Cir. 1998); <u>Kalejs v. INS</u>, 10 F.3d 441, 463 (7th Cir. 1993); <u>Outley v. City of New York</u>, 837 F.2d 587, 590 (2d Cir. 1988).

6. <u>Discovery - Interrogatories</u>. Federal Rule of Civil Procedure 33 governs interrogatories. It states that "Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable."

7. <u>Discovery - Objections to Interrogatories</u>. All objections must be stated with specificity and any objection not raised is waived. Fed. R. Civ. P. 33(b)(4). "Mere recitation of familiar litany that interrogatory is 'overly broad, burdensome, oppressive, and irrelevant'" does not suffice as specific objection. <u>Momah, v. Albert Einstein Med. Ctr.</u>, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (quoting <u>Josephs v. Harris Corp.</u>, 677 F.2d 985, 992 (3d Cir. 1982)).

8. <u>Discovery - Requests for Production</u>. A party seeking discovery may serve a request on another party asking him to permit the requesting party "to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served." Fed. R. Civ. P. 34(a).

9. <u>Discovery - Requests for Production - Objections</u>. While Rule 34 of the Federal Rules of Civil Procedure does not contain the same specificity and waiver provisions as Rule 33

of the Federal rules of Civil Procedure, the Advisory Committee notes to Rule 34 states that "the procedure provided for in Rule 34 is essentially the same as that in Rule 33." <u>Pulsecard v. Discover Card Servs., Inc.</u>, 168 F.R.D. 295, 303 (D. Kan. 1996).

10. <u>Discovery - Motion to Compel</u>. Motions to compel responses to interrogatories and requests for production are governed by Federal Rule of Civil Procedure 37(a)(2)(B). This Rule provides that if a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request." <u>Id.</u>

11. <u>Discovery - Motion to Compel - Burden of Proof</u>. The party opposing a motion to compel bears the burden of showing why it should not be granted. <u>Roesberg v. Johns-Manville Corp.</u>, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); <u>Rogers v. Tri-State Materials Corp.</u>, 51 F.R.D. 234, 247 (N.D. W. Va. 1970).

12. <u>Discovery - Motion for Protective Order</u>. Pursuant to Federal Rule of Civil Procedure 26(c), a party called upon to answer discovery may move the Court for a protective order to avoid "annoyance, embarrassment, oppression, or undue burden or expense." The moving party must certify he has attempted to resolve the dispute without judicial action. <u>Id.</u> If the Court finds the Motion meritorious, it may order that the party requesting discovery not have the material, have discovery only upon certain terms, have discovery by a different method, have discovery only upon limited matters, have discovery with only certain persons allowed to access the material, have a deposition opened only upon court order, not have a trade secret opened to the public, or that the parties file simultaneous discovery of specified material that only a court order will open. <u>Id.</u> The moving party bears the burden of showing good cause why the

protective order should be granted.  Lohrenz v. Donnelly, 187 F.R.D. 1, 3 (D.D.C. 1999).

C.     Discussion

I.

Plaintiffs' Motion to Compel

The Court first considers Plaintiffs' motion to compel.  The Court will examine each discovery request in dispute, presenting the arguments of the parties and the Court's reasoning regarding the law.  The Court notes that not all the requests in the motion to compel receive coverage in this order.  At the hearing, the Court asked counsel for both sides which requests remained in dispute.  The Court has decided the motion to compel regarding each of the requests mentioned by counsel.  Furthermore, counsel for both sides confirmed at the conclusion of the hearing that no other requests remained in dispute.

The first requests in dispute are interrogatories two, three, and four.  At the hearing, the parties agreed these requests presented the same issues.  Interrogatory two asked Defendant to list all lawsuits filed against it from 2002 to the present in West Virginia.  Defendant was asked to state the court where the action was filed, the case number, the date the suit was filed, the subject matter of the case, and the current status or ultimate outcome of the case.  Interrogatory three requested Defendant to state all claims made against it in West Virginia from 2002 to the present.  Defendant was asked to include the name and address of the claimant, the date the claim was filed, the subject matter of the claim, and its ultimate resolution.  Interrogatory four asked Defendant to list all claims brought against it in West Virginia from 2002 to the present where the claims were referred to arbitration.  Defendant was also asked to include the name of the arbitrator, the company he worked for, and the resolution of the arbitration.

Defendant objected to providing this information. Defendant objected to interrogatory two because it asked about lawsuits by borrowers of loans serviced by Defendant, whereas Plaintiffs are third parties to loans. Defendant also contended that unproven allegations do not tend to show it violated the law in this case and that given the broad scope of the statute Plaintiffs make their claims under, unrelated claims could be encompassed.[1] Defendant further objected that the West Virginia Consumer Credit Protection Act contains many provisions unrelated to Plaintiffs' claims. Defendant objected to interrogatory three on the ground that although it asked for "claims," it did not specify which type of claim was intended. The motion to compel later clarified this was limited to written complaints filed with Defendant, not including suits. Defendant also objected that Plaintiffs were not similarly situated with borrowers of loans. Defendant objected based on the great number of provisions of the W.V. Consumer Credit Protection Act. Defendant objected to interrogatory four on the ground that no arbitration agreement existed between the parties and Defendant had not sought to compel Plaintiffs to take their claims to arbitration. Defendant again objected that since Plaintiffs did not have a loan serviced by Defendant, their situation is not similar to those who had such a loan. Defendant also objected that disclosure of unproven claims would not aid Plaintiffs' case and that disclosure would violate the privacy rights of others. Finally, Defendant objected that the great number of provisions of the W.V. Consumer Credit Protection Act meant unrelated suits fell under the interrogatory.

The Court first rejects the claim that the fact that Plaintiffs are not first party borrowers

---

[1] It should be noted Defendant also objected to the extent the interrogatory asked for "all claims." However, in subsequent correspondence Plaintiffs agreed to limit such requests to suits involving the West Virginia Consumer Credit Protection Act, the tort of outrage, and intentional infliction of emotional distress.

prevents them from obtaining information about claims from such persons. Plaintiffs have correctly argued that West Virginia law permits a jury to consider past incidents of similar conduct in determining punitive damages. Syl. Pt. 3, Garnes v. Fleming Landfill, Inc., 413 S.E.2d 897 (W. Va. 1991). The Court sees no reason why borrowers of loans could not have suffered the same indignities alleged by Defendant. For instance, Plaintiffs have alleged agents of Defendant cursed them on the phone. There is no reason this could not have happened to borrowers.

The Court also rejects the argument Defendant should not be required to disclose information from its dealings with other parties on the ground that unproven allegations do not prove any wrongful conduct by Defendant. Information from other incidents may certainly lead to the discovery of admissible information. It is highly relevant.

The Court does find merit in Defendant's argument that the enormous number of sections in the W. V. Consumer Credit Protection Act mean unrelated actions could fall under the interrogatories. Defendant shall only be required to disclose related developments, although as stated above it may not use the fact that Plaintiffs are third parties to a loan to deny disclosure.

Therefore, the motion to compel regarding interrogatory two is granted as framed. Defendant's objections lack merit for the reasons stated above, except for the breadth of the W.V. Consumer Credit Protection Act. However, it is uncertain whether a jury will ever hear information on punitive damages. It is the common practice of this district to order a party served with a proper discovery request regarding information relevant to punitive damages to require the served party to file the information under seal with the Clerk of the Court, to be unsealed when a jury considers punitive damages. The Court will follow that approach here.

Plaintiffs agreed in correspondence with counsel to also limit the interrogatory to lawsuits involving the West Virginia Consumer Credit Protection Act, the tort of outrage, and intentional infliction of emotional distress, and to limit the temporal scope to 2004 and later.[2] Therefore, Defendant shall file the information requested in the interrogatory and as limited by the Court with the Clerk of the Court under seal within thirty days from the date of this order.

The motion to compel regarding interrogatory three is also granted as framed. Defendant's objections again lack merit for the same reasons as already analyzed, except for the scope of the W. V. Consumer Credit Protection Act. Plaintiffs agreed to limit the scope of this interrogatory to written complaints filed with Defendant. The relevance of this request appears to again be punitive damages. Therefore, Defendant shall file the information requested in the interrogatory and as limited by the Court with the Clerk of the Court under seal within thirty days from the date of this order.

The motion to compel regarding interrogatory four is also granted as framed. Defendant's objections as to the relevancy of this interrogatory lack merit for the same reasons as above, except for the scope of the W. V. Consumer Credit Protection Act. The Court briefly notes Defendant has also objected to this request based on the privacy interests of borrowers, but both federal and state statutes provide for disclosure of information upon court order. 15 U.S.C. § 1692c(b); W. Va. Code § 46A-2-126(c). The relevance of this information again appears to be punitive damages. Therefore, Defendant shall provide the information requested by the interrogatory under seal with the Clerk of the Court within thirty days from the date of this order. The interrogatory is limited from its original form as stated in Plaintiffs' correspondence with

---

[2] Plaintiffs agreed to the temporal limitation of 2004 or later for all requests where Plaintiffs objected based on the scope of time.

Defendant and pleadings.

Interrogatory five asked Defendant to identify each case where Defendant's actions were referred to the West Virginia Attorney General or where the Attorney General took some action regarding Defendant. Defendant was asked to state the persons or organizations involved, the reason for the referral, the relevant dates, and how the matter ultimately concluded. Defendant objected that the interrogatory was vague as to which actions Plaintiffs sought to know. Defendant also raised objections concerning the status of Plaintiffs as third parties to a loan, the fact that the interrogatory sought to know about all instances, and the privacy rights of others. Plaintiff later limited the scope of the interrogatory to actions Defendant knows about.

The Court has concluded this interrogatory is plainly overly broad and therefore the motion to compel regarding it is denied. The interrogatory asks for any action whatsoever taken by the Attorney General regarding Defendant. This will surely encompass numerous actions that have nothing to do with this case or any wrongful conduct by Defendant. Answering it would require Defendant to spend large amounts of manpower gathering this largely irrelevant documentation, which would surely represent an enormous burden. Accordingly, Defendant shall not be forced to answer this interrogatory.

Interrogatory seven requested Defendant to state its income from loans to West Virginia residents and to state the source of the income. Defendant was asked to distinguish income from interest, late fees, insurance, and deferred payment plan fees. Defendant objected that income derived from West Virginia loan recipients has no relevance to Plaintiffs' claim. It also objected based on confidential commercial information and trade secrets, though it did not provide any detail regarding these claims. In its response, Defendant argues that since the interrogatory

11

asked about loans it made to West Virginia residents and it only services loans, it should not be required to answer.  At the hearing, the parties agreed it was reasonable to require Defendant to file information responsive to the interrogatory under seal with the Clerk since the information is relevant to the punitive damages issue.  Therefore, the Court construes the interrogatory to concern income Defendant made from servicing loans made to West Virginia residents and orders Defendant to file this information from 2004 to the present and as otherwise stated by the interrogatory with the Clerk of the Court under seal, to be opened in the event the Court determines consideration of punitive damages should occur.  Defendant shall do this within thirty days from the date of this order.

Interrogatory eight asked Defendant to identify each West Virginia borrower who had a home re-possessed by Defendant from 2002 to the present.  Defendant objected on the basis of relevancy.  It states the home at issue in this case has not been re-possessed.  Defendant also objects on the basis that Plaintiffs are not borrowers and on the privacy interests of others.

The Court concludes the information sought in this interrogatory could lead to the discovery of admissible information and so is relevant for purposes of discovery.  It is true that since Plaintiffs did not have a home for Defendant to foreclose on, the situations of the persons the interrogatory speaks about do not parallel that of Plaintiffs.  Yet persons who suffered foreclosure may have information regarding the techniques Defendant employed to encourage payment before foreclosing.  This could be relevant to the issue of punitive damages.  Defendant's other assignments of error have been considered and rejected in previous discovery requests and are rejected again.  Thus, Defendant shall file the information sought in this interrogatory under seal with the Clerk of the Court, to be disclosed in the event the Court

determines a jury should consider punitive damages. The temporal scope of the interrogatory is limited to 2004 to the present.

Interrogatory nine asked Defendant to state all borrowers who received letters from Golden & Amos at the direction of Defendant. Defendant objected on the basis of the attorney client privilege and the work product doctrine, although it did not provide any detail about why those privileges may apply. Defendant also objected based on the lack of similarity between Plaintiffs and borrowers of loans and the privacy of others.

The Court first finds that since Defendant has failed to comply with the Federal and Local Rules regarding the process for claiming privilege, it has waived any attorney client privilege or work product protection it may have had. The Federal and Local Rules require a party asserting a privilege to provide information regarding the privilege claims. Fed. R. Civ. P. 26(b)(5); L.R. Civ. P. 26.04(a)(2)(A). Since Defendant did not provide any of this information, it has waived any privilege. Atteberry v. Longmont United Hosp., 221 F.R.D. 644, 648-49 (D. Colo. 2004). The remainder of objections have been dealt with in previous requests and rejected. However, the Court notes Defendant's response states it does not maintain a database of these letters or know of everyone who received them. Defendant shall answer to the extent possible within thirty days.

Interrogatory ten asked Defendant to provide a list of all employees who made phone calls for Defendant regarding the account of Anthony Caton. Defendant was requested to provide their dates of employment and if no longer employed, the last known telephone number and address. Defendant objected that it did not begin to service the Caton account until November 2004. It provided a list of people who may have made phone calls after that time and

13

stated which of those no longer worked for it. Defendant objected to providing the telephone number and address on grounds of the privacy rights of the employees. It has been held that parties may discover addresses and telephone numbers "since this information provides a means to contact potential witnesses." Chavez v. Daimler Chrysler Corp., 206 F.R.D. 615, 622 (S.D. Ind. 2002). Accordingly, Defendant shall provide the last known address and telephone number of former employees to Plaintiffs within thirty days from the date of this order.

Interrogatory eleven asked Defendant to state the names of any employees who sent a letter for Defendant regarding the Anthony Caton account from 1999 to the present. Defendant was again asked to provide the dates of employment and if no longer employed, the last known telephone number and address of the person. Defendant again stated it did not service the Caton account until November 2004. It then provided the names of two persons no longer with the company who may have sent letters. It objected to providing any contact information on the ground of employee privacy. For the same reasons as stated regarding interrogatory ten, Defendant shall provide this information within thirty days from the date of this order.

Interrogatory fourteen asked Defendant to explain its compensation system for employees and managers of its collections department. Defendant objected that the compensation system was irrelevant to Plaintiffs' claims. Defendant also objected that the request was not limited to persons who participated in the Caton claim, that disclosure would violate the privacy rights of employees, and that the interrogatory involved trade secrets. Plaintiffs contend the knowledge of the incentive system is important to knowing the motivation Defendant's employees had to harass them.

The Court concludes the information at issue is highly relevant. As Plaintiffs contend,

14

the incentives Defendant's employees had to seek repayment of the Caton debt could provide valuable information regarding their actions. A performance-based incentive system would give people an incentive to take a more aggressive approach. The Court agrees with Defendant that the only compensation systems relevant are those of employees who handled the Caton matter. The Court finds Defendant's unsubstantiated allegation of trade secrets without merit. Thus, Defendant shall provide Plaintiffs with information regarding the compensation system of employees who handled the Caton matter within thirty days from the date of this order.[3]

The Court now turns to the requests for production at issue. Requests one, two, and three are very similar. Request one asked Defendant to produce all non-privileged documents for each case responsive to interrogatory two. Request two asked for all non-privileged documents for each claim stated in response to interrogatory three and request three sought the written decisions of the arbitrator in case stated in response to interrogatory four.

The Court concludes these three requests are facially overly broad and unduly burdensome and therefore the motion to compel regarding them is denied. DIRECTV, Inc. v. Puccinelli, 224 F.R.D. 677, 688 (D. Kan. 2004); Wagner v. Dryvit Systems, 208 F.R.D. 606, 610 (D. Neb. 2001); Stephens v. City of Chicago, 203 F.R.D. 353, 361 (N.D. Ill. 2001); Alexander v. FBI, 186 F.R.D. 21, 40 (D.D.C. 1998). These requests require Defendant to produce all non-privileged documents over a potentially vast number of cases. Production of all documents from a single case could represent a potentially significant burden if the case had a large volume of documents. When considered in light of the breadth of Plaintiffs' requests, it is clear these

---

[3] The Court notes that in Defendant's response, it stated that no performance-based compensation system existed. However, Plaintiffs contradicted this in their reply. The Court thinks an answer would help solve the dilemma.

requests are overly broad and unduly burdensome.

Request eleven asked Defendant to provide "all documents showing how compensation of employees and managers of the collections department is determined, including commissions, bonuses, etc." Defendant objection that the phrase "collections department" was ambiguous. It stated it does not have a collections department per se or even have individuals employed as collection agents. Finally, Defendant objected on the basis of trade secrets and other proprietary information.

For the same reasons as stated in the analysis of interrogatory fourteen, the Court concludes Defendant should produce this information to the extent possible. At the hearing, Defendant's counsel represented it was uncertain whether Defendant had a written policy regarding bonuses. Defendant shall produce any documentation regarding its compensation policy for the employees who worked on the Caton file to the extent it has such documentation within thirty days from the date of this order.

II.

Defendant's Motion for Protective Order

The Court now turns to Defendant's motion for protective order. At the hearing, the parties stated that the areas in dispute had narrowed to items two and five in the deposition notice.

The second deposition notice area asked for testimony concerning prior lawsuits where Defendant was alleged to have violated the W. V. Consumer Credit Protection Act or committed the tort of outrage and/or intentional infliction of emotional distress. The Court has already addressed this issue when discussing interrogatory two above. Testimony shall be permitted

regarding lawsuits filed against Defendant in West Virginia from 2004 or later regarding alleged violations of the W. V. Consumer Credit Protection Act and the tort of outrage and/or intentional infliction of emotional distress.  However, testimony regarding the W.V. Consumer Credit Protection Act is limited to claims similar to those of Plaintiffs.  Plaintiffs' status as third parties to a loan shall not be an obstacle.

The fifth deposition notice area concerned compensation arrangements for employees and managers of Defendant engaged in collection.  The Court has already discussed this when examining interrogatory fourteen above.  The same reasoning applies here.  Testimony shall be permitted regarding this area.

Thus, the motion for protective order is granted in part and denied in part.

## IV.  Decision

Plaintiffs' motion to compel discovery and Defendant's motion for protective order are both granted in part and denied in part, as stated in this opinion.

Any party may, within ten (10) days after being served with a copy of this Order, file with
the Clerk of the Court written objections identifying the portions of the Order to which objection is  made, and the basis for such objection.  A copy of such objections should also be submitted to the District Court Judge of Record.  Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

Filing of objections does not stay this order.  Filing a motion to stay this order does not stay this order.  In the absence of an order from the district court staying this order, all parties must comply with this order in a timely fashion as set forth herein.

DATED: August 2, 2007

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE